Mr. Justice McLEAN
 

 delivered the opinion of the court.
 

 This is a writ of error to the Supreme Court of the State of' Missouri. ■ -.
 

 The parties agreed as to the facts in this Case, in order that the points of law might be ruled by the court.
 

 , On- the 9th of July, 1811, there were confirmed to James Smith, by the- commissioners for the adjustment of titles to. land in the Territory of Missouri, lots nine and ten, (9 and 10,) containing two árpens of land, imthe village of Little Prairie, in the county of New Madrid, State of Missouri. Afterwards
 
 *429
 
 these lots, while still owned by said Smith, were materially injured by earthquakes, and proof thereof was made before the recorder , of land titles at St. Louis, on the 16th of Novem her, 1815; whereupon, there was issued by said recorder, to said James Smith, a certificate of new location, (commonly called a New Madrid certificate,) numbered 159. On the 22d of October, 1816, said Smith and wife conveyed to Rufus Easton' the said two arpens in Little Prairie, and assigned to him the right to locate other lands under said certificate in lieu of the land so injured, and also conveyed to said Easton the land that might be located by means of said certificate. . On the 16th of November, 1816, Easton gave notice to the surveyor general of said Territory of Missouri of the location of said certificate on a tract of. land about two miles west of the city of St. Louis, and demanded a survey thereof. In March, 1818, a survey was made,- by direction .of the surveyor general, in pursuance of said selection, and was duly returned and approved by said surveyor general; said survey is numbered 2,491, and' the land thereby designated embraces the land in controversy, and is within St. Louis township, in St. Louis county, Missouri. By virtue of the premises, Easton held said land, claiming the same until 1826, when he conveyed the same to. William Russell. On the 28th day of May, 1827, the United States issued a patent on said location for said land to James Smith or his legal representatives. On the 19th of January, 1839, William assigned and conveyéd all his interest in said land to J. G-. Easton, who, on the 18th of March, 1845, conveyed and assigned the same to plaintiff. Defendant is in possession of the land described in the petition, and the same is within the boundaries indicated by said survey and patent.
 

 On the 20th of January, 1800, a concession was made by the Spanish Lieutenant Governor, to one Mordecai Bell, of three hundred and fifty arpens of land, including the premises in controversy. The. representatives of Mordecai Bell, on the 29th of June, 1808, presented the claim for said land, together with a descriptive plat of survey thereof, to. the board of commissioners for the adjustment of land- titles in the Territory of Missouri. The documents showing said claim,' and the deriv
 
 *430
 
 active title from Mordecai. Bell, were duly recorded in 1808 by the recorder of land titles for the Territory of Missouri. And on the 4th day of July, 1836, the United States confirmed said claim, according to said plat of survey, to the legal representatives of M. Bell; a survey of said confirmation was made by authority of . the United States in-, and is numbered 3,026. Said survey embraces the land in dispute; and all the title of. the confirmee, by the act of 1836, is in the defendant. The survey numbered 2,491, and also the patent dated 28th of May, T827, are in due form of law; but defendant does not admit the authority of the officers of the United States to make the one or issue the other, nor that the same were made or issued under any law. It is admitted that the land in controversy is worth more'than two thousand dollars; that if the court should be of opinion-that the plaintiff is entitled to recover, it is agreed that the damages shall be fixed at one cent, and the monthly value of the premises at one dollar. Either party is at liberty to turn this case into a bill of exceptions, and thereon prosecute' a writ of error, or take an appeal to the Supreme Court of the State of Missouri, or of the United States. It is admitted that survey No. 3,026 was made under the authority of the United States, but the plaintiff may dispute the power of the United States as regards both the confirmation of 1836 and the survey No. 3,026.
 

 It is admitted that the plaintiff had, at the commencement of this suit, all the title that was invested' in'said- James Smith, or his representatives, by the New Madrid location and patent above mentioned.
 

 It will be observed that this controversy arises between a New Madrid title and a. Spanish concession. A holder of a New Madrid certificate had a right to -locate it on any-of the public lands which had been authorized' to be sold. This claim came into the hands of Alton R. Easton, the plaintiff in error. It yas surveyed in March, 1818, and the 28th of May, 1827, the United States issued a patent to James Smith, or his legal representatives. •
 

 . Erom 1808 to the-26th of May, 1829, reservations were made from time to time to satisfy certain claims, but from that time
 
 *431
 
 they ceased, until renewed by the act of the 9th of July, 1832. During this period, it is understood by the plaintiff in error, the “ land in question'was subject to be disposed of to any person, or in any manner, and was then open to entry .or location. And it is urged that the plaintiff had the right during this time to perfect his title.”
 

 The President of the United States has no right to issue patents for land, the sale of which is not authorized by law. In the case of Stoddard
 
 v.
 
 Chambers, (2 How., 318,) it is said, “The location of Chambers was made on lands not liable to be thus appropriated, but expressly reserved; and this was the ease when his patent was issued.” Had the entry been made or the patent issued after the 26th' of May, 1829, when the reservation ceased, and before it was revived by the act of 1832, the title of the defendant could not be contested.
 

 Nothing was done to give Easton’s title validity, from the •cessation of the reservation, in 1829, until its revival, in 1832. His entry was made in'1818, and on the 28th of May, 1827, his patent was issued. The land located and patented, having been reserved, was not liable to be appropriated by his patent. Whether the withdrawal of the patent might have been procured, or a new one instituted, it is' not necessary to inquire. No such attempt was made.
 

 But it seems by the act of the 26th of April, 1822, it was provided that all warrants under the New Madrid act of th15th of February, 1815, which shall not be located within onyear, shall be held null and void. This law is decisive upon this point: all New Madrid warrants not located within one year from the 26th of April, 1822, are null and void. Smith’s or Easton’s certificate for the New Madrid claim was void, and also his patent when issued, under the paramount claim of Bell, whose title was confirmed by the act of the 4th of July, 1836. Bell made the conveyance to Mackey, not having the legal title; but when, under the act of 1836, the report of the commissioners was confirmed to Bell and his legal representatives, the legal title vested in him, and inured, by way of estoppel, to the grantee, and those who claim by deed under him. (Stoddard
 
 v.
 
 Chambers, 2 How., 317.)
 

 
 *432
 
 There was no period from the entry and patent of the New Madrid claim in which that claim was valid. The location was not only voidable, but it was absolutely void, as it was made on land subject to a prior right. And under the act of 1822, all New Madrid warrants not located within a year from that date, were declared to be void.
 

 Whether we look at the confirmatory act of 1836, which vested the title in the confirmee, or to the New Madrid title asserted against it, it is clear that the New Madrid title is without validity, and that the fee is vested in the grantee of Bell.' ■