D. L. HAMMOND ET AL., Plaintiffs in Error, *v.* N. COLEMAN ET AL., Defendants in Error.

### July 3, 1877.

1. Where the certificate of acknowledgment in open court of a sheriff's deed, offered in evidence, is not attested by the clerk's official seal, the deed is properly excluded.

2. A New Madrid location is not rendered void by reason of a failure to return the survey thereof to the recorder of land titles within one year after the passage of the act of Congress, approved April 26, 1822, entitled "An act to perfect certain locations and sales of public lands in Missouri." If the location be made within one year after April 26, 1822, an appropriation may take effect upon the return of a survey, whenever made.

3. A location established by approved government surveys cannot be set aside upon testimony, from unofficial sources, tending to show that another location was the true one.

4. In an action of ejectment defendant cannot, as a defence, set up an outstanding title by virtue of inhabitation and cultivation prior to December 20, 1803, where no attempt is made to identify the parties who are supposed to have so inhabited and cultivated the land.

5. "A government grant being made to J. H., 'or his legal representatives,' the question as to who are such legal representatives is one of fact, to be determined under the laws of the State wherein the property lies. Where, by State regulations, adverse possession under claim of ownership operates

a transfer of title, such adverse possession may be as effectual to create a legal representative as a transfer by deed or inheritance. Giving effect to such a transfer does not defeat the grant or interfere with the primary disposal of the soil, but aids the grant by ascertaining the grantee."

6. *Gibson* v. *Chouteau* considered.

ERROR to St. Louis Circuit Court.

*Affirmed.*

J. L. D. MORRISON, plaintiff in error, *pro se:* It was necessary that the survey be returned to the recorder of land titles before April 26, 1822, to effect an appropriation of the land. — *Broderick* v. *Bagnell*, 13 Pet. 436; *Rector* v. *Ashley*, 6 Wall. 142; *Mackay* v. *Easton*, 19 Wall. 619. The certificate of acknowledgment of a sheriff's deed must be attested by a seal. — *Allen* v. *King*, 35 Mo. 216; *Ryan* v. *Carr*, 46 Mo. 484; *Adams* v. *Buchanan*, 49 Mo. 64; *Harvey* v. *Ramsey*, 49 Mo. 309. The deed of one having no title conveys nothing; those who come in under a void grant can acquire nothing. — *Polk's Lessee* v. *Wendell*, 9 Cranch, 5; *Sampeyrac* v. *The United States*, 7 Pet. 241; *The United States* v. *Aridondo*, 6 Pet. 731; *Stoddard* v. *Chambers*, 2 How. 318; *Maguire* v. *Tyler*, 40 Mo. 434; *Gibson* v. *Chouteau*, 13 Wall.; *McCracken* v. *Wright*, 14 R. I. 193. · No relation can be had to a *void* act, nor to a time anterior to the date of the first legally *inceptive* act, in the creation of a title, and then only in furtherance of justice, and to those only who stand in some privity with the patentee, who had the right to the land. — *Gibson* v. *Chouteau*, 13 Wall. 101; *Heath* v. *Ross*, 12 Johns. 140; *Lynch* v. *Bernal*, 9 Wall. 325; *Montgomery* v. *Ives*, 13 Smed. & M.

D. T. JEWETT, for plaintiffs in error: Where one purchases a claim from him who files it, prior to confirmation, the confirmation enures to the purchaser. — *Landes* v. *Brunt*, 10 How. 31; *Langlois* v. *Crawford*, 59 Mo. 468. Return of survey. — *Rector* v. *Ashley*, 6 Wall. 142; *Mackay* v. *Easton*, 19 Wall. 619; *Hot Springs Cases*, 2 Otto, 707;

*Gibson* v. *Chouteau*, 39 Mo. 560. Adverse possession. — *Miller* v. *Dunn*, 62 Mo. 216 ; *McIlhinney* v. *Ficke*, 61 Mo. 329. Title by virtue of location. — *McCamant* v. *Patterson*, 39 Mo. 106. Acknowledgment of sheriff's deed. — *Allen* v. *Moss*, 27 Mo. 364 ; *Samuel* v. *Shelton*, 48 Mo. 444 ; *McClure* v. *McClerk*, 53 Mo. 173. In the absence of proof, it is presumed that a deed is not delivered until it is acknowledged. — *Fontaine* v. *Boatmen's Savings Institution*, 57 Mo. 560 ; *Blanchard* v. *Tyler*, 12 Mich. 342 ; *Himry County* v. *Bradshaw*, 20 Iowa, 362.

B. A. HILL, for defendants in error : Survey and return. — *Hale* v. *Gaines*, 22 How. 144 ; *Easton* v. *Salisbury*, 21 How. 426. Confirmation. — *West* v. *Cochran*, 17 How. 413 ; *Standford* v. *Taylor*, 18 How. ; *Maguire* v. *Tyler*, 8 Wall. 650, and 14 Wall. Uncertainty of description in deed. — *Holme* v. *Strautman*, 35 Mo. 293. When a legal title is completed, it relates back to the first incipient step taken to procure it. — *Alexander* v. *Merry*, 9 Mo. 510 ; *Page* v. *Hill*, 11 Mo. 149 ; *Crowley* v. *Wallace*, 12 Mo. 145 ; *Winston* v. *Affalter*, 49 Mo. 263 ; *Porter* v. *Martin*, 50 Mo. 364 ; *Mitchell* v. *Handfield*, 33 Mo. 431 ; *McCabe* v. *Worthington*, 16 Mo. 510 ; *Papin* v. *Massay*, 27 Mo. 445 ; *Carpenter* v. *Rannells*, 45 Mo. ; *City of St. Louis* v. *Toney*, 21 Mo. 243. Parol evidence is admissible to show that land described in a sheriff's deed is well known, in the community where situated, by the description given, however vague it may be ; and if the land is well known by such description, the sale and deed are valid and binding. — *Bank of Missouri* v. *Bates*, 17 Mo. 583 ; *Webster* v. *Blount*, 39 Mo. 500 ; *McPike* v. *Allmen*, 53 Mo. 551 ; *Schewalter* v. *Priner*, 55 Mo. 218. Presumptions as to seal of ancient deed. — *Geary* v. *Kansas City*, 61 Mo. 378 ; *Dale* v. *Wright*, 57 Mo. 110 ; *Hedden* v. *Overton*, 4 Bibb, 406 ; *Griffin* v. *Sheffield*, 38 Miss. 359 ; *Snead* v. *Ward*, 5 Dana, 187 ; *Smith* v. *Dill*, 13 Cal. 510 ; *Jones* v. *Martin*, 16 Cal. 165. " Twenty years' adverse possession warrants a pre-

sumption that the possessor had a deed of the property, and that all acts necessary to give the deed effect were done." — 1 Mass. Dig. 549; *Brattle Square Church* v. *Bullard*, 2 Metc. 363; *White* v. *Loring*, 24 Pick. 319; *Ryder* v. *Hathaway*, 21 Pick. 298; *Valentine* v. *Piper*, 22 Pick. 85; *Blair* v. *Marks*, 27 Mo. 579. "A grant may be presumed after a lapse of many years, when possession has accompanied the claim of title." — 2 Brightly's Dig. 3218, sec. 993; Johns. Cas. 109; *Schuyler* v. *Russell*, 4 Wend. 543; *Constantine* v. *Warford*, 7 Wend.; *Briggs* v. *Prosser*, 14 Wend. 227; *Cahill* v. *Palmer*, 45 N. Y. 478; *Newman* v. *Studley*, 5 Mo. 291; *McNair* v. *Hunt*, 5 Mo. 300; *Landis* v. *Perkins*, 12 Mo. 254. Adverse possession for ten years creates in the possessor an affirmative title, under which he may maintain ejectment. — *Barry* v. *Otto*, 56 Mo. 177; *Davis* v. *Thompson*, 56 Mo. 39. An uninterrupted notorious adverse possession of ten years, under claim of title, operates to vest in the claimant so holding possession the title of such land as effectually as though such title had been acquired by deed. — *Biddle* v. *Mellon*, 13 Mo. 335; *Blair* v. *Smith*, 16 Mo. 273; *Shaw* v. *Nicholay*, 30 Mo. 99; *Warfield* v. *Lindell*, 38 Mo. 561; *Nelson* v. *Brodback*, 44 Mo. 596; *Wall* v. *Shinder*, 47 Mo. 282.

Lewis, P. J., delivered the opinion of the court.

This is a suit in ejectment, commenced June 13, 1874, for recovery of survey No. 2500, under New Madrid certificate No. 161, located in township 45 of range 1 east, in St. Louis County. Defendants answered, denying generally, and alleging continuous adverse possession, under claim of title, for more than fifty years. The cause was tried before the court sitting as a jury, and judgment was rendered for the defendants.

By an act of Congress, approved June 30, 1864, "all of the right, title, and interest of the United States in and to"

the land sued for was " granted, relinquished, and conveyed by the United States, in fee-simple and full property," to " Joseph Hunot, or his legal representatives." The act identifies the land as being within the boundaries of the location made by virtue of certificate No. 161, issued under the act of Congress, approved February 17, 1815, entitled " An act for the relief of the inhabitants of the late county of New Madrid, in the Missouri Territory, who suffered by earthquakes." Plaintiffs claim to be the legal representatives of Joseph Hunot, by virtue of the following facts :

In 1808 Joseph Hunot presented his claim before the board of commissioners for adjustment of land titles in the territory of Louisiana for a tract of land in New Madrid County, under a permission to settle granted him in 1802. On May 12, 1810, he conveyed his pending claim to Joseph Vandenbenden, by deed, with special warranty, stipulating that " should the claim not be held good by government, and the same or any part of the same tract should not be granted, he, the said Joseph Vandenbenden, to lose the same, and he, the said Joseph Hunot, to be in no wise responsible therefor." The claim was rejected by the board, January 31, 1811; but on November 1, 1815, Recorder Bates included it in his list of confirmations reported to Congress for ratification under the act of March 3, 1813. On November 4, 1815, Vandenbenden conveyed to Rufus Easton, with special warranty, and an authority to use the name of the grantor, if necessary, in obtaining a certificate of new location. The act of Congress approved April 29, 1816, ratified and confirmed the action of Recorder Bates. On August 12, 1816, Recorder Bates issued New Madrid certificate for location No. 161, in favor of Joseph Hunot, or his legal representatives, for 480 acres. Upon notice and request of Rufus Easton, dated June 16, 1818, the surveyor-general caused survey No. 2500, bearing date June 23, 1819, to be made of the land in controversy. On September 29, 1823, Easton and wife conveyed to Samuel

Hammond. Survey No. 2500 was not returned to the recorder of land titles until January 8, 1833. The plaintiffs are the immediate heirs (or their assignees) of Samuel Hammond, who died in 1846.

Defendants deny that the foregoing facts, if admitted, suffice to constitute plaintiffs the legal representatives of Joseph Hunot. In support of this denial a number of points were made at the trial. Upon nearly all, however, the finding of the court was in plaintiffs' favor; and no ground for reversal existing, therefore, as to these, they need be very briefly noticed.

An original sheriff's deed was introduced by defendants, bearing date November 24, 1823, from which it appeared that certain real estate, supposed to include the land in controversy, was sold to Relfe & Chew, under judgment and execution in their favor against Samuel Hammond. Among other objections to this instrument was one that the certificate of the sheriff's acknowledgment in open court was not attested by the clerk's official seal. Testimony of experts was introduced to establish the absence of a seal, and upon the issue of fact, as it appears, the court found that no seal existed. Upon such a finding, the deed was properly excluded from the consideration.

It is urged that the New Madrid location was void, to all intents and purposes, because the survey was not returned to the recorder of land titles within one year after April 22, 1822. The controversy upon this point has some peculiar aspects. One of the counsel for plaintiffs cites authorities showing that no insufficiency resulted from this delay in returning the survey; while his associate maintains the contrary, and deduces therefrom an argument in favor of the plaintiffs. On the other hand, one of the defendants' counsel submits an able argument to show that the delayed return did not invalidate the location, while another maintains not only that the same fact rendered the location absolutely void, and that this conclusion is indispensable for his

clients' success, but that the Circuit Court so found and declared the law; wherefore the judgment should not be disturbed. The record shows, nevertheless, that two instructions were asked for by plaintiffs, to the effect that the location was void for the reason stated, and that both were refused. No other instruction was offered in that connection.

The act of Congress, approved April 26, 1822, after providing that New Madrid locations previously made, if otherwise conformable with existing laws, should be perfected into grants, although not conformed to the sectional or quarter-sectional lines of the public surveys, required that all future locations should conform to those lines as nearly as practicable, and concluded with the words, "and all such warrants shall be located within one year after the passage of this act, in default whereof the same shall be null and void."

In *Easton* v. *Salisbury*, 21 How. 426, a New Madrid location was surveyed in 1818, and the patent thereon was issued in 1827. McLean, J., in delivering the opinion of the court, declares the location void, and refers to the act of April 26, 1822, as conclusive of the fact. From this it has been inferred that it is not sufficient that the initiative location by the holder of the warrant or certificate appear to have been made prior to the expiration of the time limited in the act, but that his equitable title to the newly-acquired land must, within the year, have been consummated by a return of the survey to the recorder of land titles, and the issuance by that officer of a patent certificate. Several decisions, to the effect that the exchange of property between the United States and the holder of the earthquake land was completed only when the patent certificate was authorized by the return of the survey, are supposed to confirm this view. But both conclusions are erroneous. In *Easton* v. *Salisbury*, the location was really void, because made upon a prior reservation. In *Mackay* v. *Easton*, 19 Wall.

619, Field, J., referring to Judge McLean's *dictum* in the former case, says : " So far as the location interfered with the concession it was void, and to that extent the patent was void also, but no further. And that is all there is in the decision in that case. The general language of the opinion must be construed and limited by the facts of the case." He then proceeds to show that, in that case, it did not appear that the survey had ever been returned at all. Hence there was no complete appropriation of the land, and the patent could not properly issue. " The court was speaking, at the time, of a completed, and not an initiatory, location." In other cases, the distinction between the initiatory and the completed location is uniformly recognized, and always to the effect that the one-year limitation in the act of April 26, 1822, had exclusive reference to the initiatory act of the holder of the certificate, and not to any acts which were to be performed by the officers of the government. True, the exchange or appropriation was not completed until the return of the survey. But no logical connection exists between that proposition and a mere requisition of diligence in taking the initiatory steps. It results that, if the holder notified the proper officers and obtained a survey, or made an entry of his location before April 27, 1823, the return of the survey, whensoever made thereafter, was considered sufficient to effect a complete location and a final appropriation of the land. In *Gibson* v. *Chouteau*, 39 Mo. 536, and 13 Wall. 92, the location was sustained, although the survey was not returned until 1841. In *Rector* v. *Ashley*, 6 Wall. 142, the return of the survey first appears on June 16, 1838. The location failed, but not at all on account of the act of April 26, 1822. It was because a different appropriation of the land had been consummated eight days earlier. In *Hale* v. *Gaines*, 22 How. 144, the initiatory location and survey were not made until 1838, and were therefore held nugatory. In *Pacific Railroad Company* v. *Lindell*, 39 Mo. 329, it was expressly decided that a New Madrid location was

valid in which the initiatory steps were taken in 1818 and 1820, but the survey was not returned to the recorder of land titles until 1859. A fair interpretation of the act of April 26, 1822, can lead to no other conclusion. We find no error in the refusal by the Circuit Court, in the case before us, of the plaintiffs' instructions on this subject.

An attempt was made to show that the land in controversy was covered by a confirmation to John F. Perry, under Angelica Chauvin, made by the board of commissioners. This claim was sustainable, if at all, only by setting aside the approved government surveys, and substituting other testimony to fix the true location of the Chauvin tract. The court properly held, in an instruction, that such a course was inadmissible.

Defendants endeavored to prove an outstanding title in some unknown person or persons by virtue of inhabitation and cultivation prior to December 20, 1803. This was properly disregarded by the court, no attempt being made to identify the supposed claimants.

Thus far the merits of the controversy deal only with the plaintiffs' right to be considered the legal representatives of Joseph Hunot. Another line of defence asserts a distinct claim to that representative character in the defendants themselves. They show that so much of the land in dispute as is held by them was allotted to them in a partition of the estate of Peter Lindell, who died in 1861, having been for more than forty years in continuous possession of the entire survey 2500, under a claim of title derived by conveyance from Joseph Hunot. It is apparent from the record that this claim on the part of defendants that they are the true legal representatives of Joseph Hunot was recognized by the Circuit Court, and formed the basis of its determination in their favor.

The case of *Gibson* v. *Chouteau*, 13 Wall. 92, is the authority most definitely relied on for the rule that the statute of limitations cannot be set up against a grantee of

the United States on account of any lapse of time before the date of the grant. The rule is unquestionable as a logical result, not merely of the ancient maxim, *Nullum tempus occurrit regi*, but also of the constitutional inhibition against any interference with the primary disposal of the soil by the Federal authority. No mere State regulation, by whatever name it may be called, can be permitted to impair in the slightest degree a grant from the United States, in all the expressed force of its terms, as it comes to the grantee. In so far the grantee represents the sovereignty of the Federal power. The right vested in him cannot be assailed by a State law, unless the same State law might have assailed it while yet residing in the government, his grantor. But all this, however strongly expressed, and in whatever form presented, presupposes an ascertained grantee. Having once determined who is the grantee of the government, an enforcement of the rule in his behalf is one thing; but to employ the rule as a preliminary means of ascertaining who is or who is not that grantee, is another and a very different thing. For this latter purpose the rule was not by any means employed in the case of *Gibson* v. *Chouteau*. It is precisely for this purpose that the plaintiffs invoke it here.

In the present case, the grant being in effect to the legal representatives of Joseph Hunot, the vital enquiry is, Who are those legal representatives? In other words, What persons may be named as the grantees of the government? In *Gibson* v. *Chouteau* there was no need for any such enquiry, and none was entertained. The government itself named the legal representative of the original claimant, and thus settled the question which in this case is the only one to be determined. The patent was to Mary McRee, the legal representative of James Y. O'Carroll, original claimant. That the government had the right to so designate its grantee by name is unquestionable, whatever may have been the relation in which she stood to the original claimant. It has

been suggested that if she had been erroneously invested with the character of legal representative, a bill in equity might have compelled her to hold the land as a trustee for the true representative, or to make a conveyance in his favor. But such a procedure, in the absence of a fraud upon the Federal officers which would suffice to vitiate the patent in any event, would have been a palpable interference with the primary disposal of the soil, however indirect the effort. Nothing less than this could have been intended by our Supreme Court in the same case (39 Mo. 563), where it was said : " The patent was issued directly to Mary McRee, as the assignee, by virtue of deraignment of title, and not to James Y. O'Carroll or his legal representatives. It assumes to have ascertained who was the assignee and legal representative. The power and authority of the president to issue the patent to this person, if truly ascertained, can scarcely be doubted." But even if equitable interference would have been admissible to a greater extent than is here supposed, it is certain that no such contingency was at all considered by the Supreme Court of the United States, nor was the case treated with reference to any such possibilities. The grant was considered as made to Mary McRee in person ; and thence the doctrine of relation to former holders of the equitable title was declared insufficient to make the statute of limitations operative against the legal title held by her as the ascertained grantee of the paramount authority. No discussion of that doctrine can be logically pertinent to the question, Who is the government's grantee ? An answer to this question, however obtained, will be in aid, and not in derogation, of the Federal authority and its purposes.

The right of legal representation in property relations, whether arising from purchase or by operation of law, has always been left by the Federal courts to be determined by the laws of the State wherein the property lies. This seems to result necessarily from the 34th section of the

Judiciary Act of 1789. In *Jackson* v. *Chew*, 12 Wheat. 153, it was declared that "the Supreme Court adopts the local law of real property, as ascertained by the decisions of State courts, whether those decisions are grounded on the construction of the statutes of the State or form a part of the unwritten law of the State which has become a fixed rule of property." In *Shelby* v. *Gay*, 11 Wheat. 361, it was said that "a fixed and received construction in a State, by its own courts, makes a part of the statute law." The Federal judiciary has never undertaken to dictate the modes of transfer which should be effectual in any State. Inheritance, or title by descent, is a form in which one may by operation of law become the legal representative of another. The line of descent may be altered by a State, from time to time, at pleasure. Statutory law may at one time make the oldest son the sole legal representative of his ancestor, and at another may bestow that capacity on all the sons and daughters. A grant by the United States to the legal representatives of A. B. would thus enure to the benefit of one or another person, or class of persons, according to the existing condition of the State law of descents. A form of conveyance may be good in one State and worthless in another, or may alternate between like extremes in the same State at different times. In such cases, again, the personal objects of a Federal grant to one's legal representatives will be settled and identified, not by an effort of the Federal sovereignty, but by State regulations. Such selections and identifications by the State are in fact historical, rather than suppositive. Are they all to be resented as interfering with the primary disposal of the soil? Do they derogate the sovereignty of the granting power? If neither, why should another form of statutory transfer, or deraignment of title, equally within the legislative competency of every State, be held obnoxious to such objections?

Adverse possession for the period of limitation does not

stop, even in theory, at the mere deprivation of a right of action. If it did so, no philosophy could deny to a naked trespasser its full protection. But the party to be protected must add to his possession at least a color or claim of title. The theory of limitation may then imply that, with the consent, possibly the coöperation, of the former owner, this colorable title has been confirmed, amplified, and ripened into an absolute title. It then becomes, not a mere passive obstacle against inroad from without, but a positive, aggressive right and ownership, which may be sued upon in ejectment. If the language of courts and law-writers means any thing, the title so acquired stands upon an equal footing, in every judicial aspect, with a title acquired by deed or inheritance. "An uninterrupted possession for twenty years not only gives a right of possession which cannot be divested by entry, but also gives a right of entry. So that if a person who has such a possession is turned out of it, he may lawfully enter and bring an ejectment for its recovery." Cru., tit. 31, ch. 2, sec. 1. "The operation of the statute takes away the title of the real owner, and transfers it, not in form, indeed, but in legal effect, to the adverse occupant. The doctrine is stated thus strongly because it seems to be the result of modern decisions, although it was once held that the effect of the statute was merely to take away the remedy, and did not bind the estate or transfer the title." * * * "As a natural consequence, the former owner is divested of all the new owner acquires. This gives to adverse possession the effect of a conveyance." 3 Washb. on Real Prop. 501. Said the court in *Pederick* v. *Searle*, 5 Serg. & R. 236: "For the right of possession is acquired by twenty-one years' possession, and this right is not only sufficient to support a defence, but it is a positive title, under which one may recover as plaintiff in ejectment." In *Moore* v. *Luce*, 29 Pa. St. 262, the court said: "The statute of limitations gives a perfect title. It is a mistake to suppose that the

person barred loses nothing but his remedy.'' It was decided in *Hughes* v. *Graves*, 39 Vt. 359, that '' the party who acquires a title to land under the statute by possession adverse to the true owner acquires all title of the true owner, precisely as if he had a deed from him.'' In *Nelson* v. *Brodhack*, 44 Mo. 600, our Supreme Court quotes some of these expressions, endorses them, and adds that '' all the authorities are the same way.'' The same court repeats, in *Shepley* v. *Cowan*, 52 Mo. 559, that the statute '' not only bars, but may transfer, a title.'' It would be impossible to find words more directly expressive of alienation from one owner to another, if the subject of discussion were a transfer by deed or inheritance.

Whatever may have been the state of affairs prior to the return of the Hunot survey to the recorder of land titles, on January 8, 1833, it is unquestionable that from that day there existed in Joseph Hunot, or in the person whomsoever that had then acquired his rights, a transferrible ownership of the land in controversy. The testimony shows that Peter Lindell then had part of it in possession. On November 5, 1834, he obtained an absolute conveyance in fee of the whole survey from Joseph Hunot, the original claimant. This was at least a color of title. It was reinforced on March 20, 1840, by a deed from Relfe and Chew, who were supposed to have acquired Samuel Hammond's title, if any, through a sheriff's deed, in 1823. In 1838 Lindell had acquired actual possession of the whole survey, a possession which has been uninterrupted to the present time. We find in these facts a transfer of title to Peter Lindell, and the defendants, claiming under him, from the former owner, who must have been either Joseph Hunot or some one who had acquired his right. This transfer by the law of Missouri we hold to be as effectual to create a legal representative of the party from whom it emanates as if it were made by deed, or by any other known method. Upon this ground we affirm the judgment of the Circuit Court.

It may be proper to add that if in the case of *Gibson* v. *Chouteau* it had been undertaken to show that Mary McRee, for any reason, was not the legal representative of James Y. O'Carroll, a resort to equity would have been necessary. No such claim was set up as an equitable defence. The Supreme Court of the United States had no occasion to consider it, nor could they do so, consistently with their scrupulous regard for the line between legal and equitable procedures. In the present case there is no need of equity. The question squarely appears as an issue of fact, to be tried in a court of law. In the language of the Supreme Court of the United States, " This formula, ' or his legal representatives,' embraces representatives of the original grantee in the land by contract, such as assignees or grantees, as well as by operation of law, and leaves the question open to enquiry in a court of justice as to the party to whom the certificate, patent, or confirmation should enure." *Hogan* v. *Page*, 2 Wall. 607.

We cannot be accused of undertaking, in this decision, to overturn any ruling of our judicial superiors. We give full effect to every utterance of the Supreme Court of the United States, if its words are to be accepted in their common meaning. We do not disregard the decisions of our own Supreme Court in *McIlhinney* v. *Ficke*, 61 Mo. 329, and *Miller* v. *Dunn*, 62 Mo. 216. The question here determined was not presented for consideration in either of those cases, though the facts may have been such as possibly to involve it.

A number of other questions were here very ably discussed in argument on both sides. But our views upon the points already considered render it unnecessary to remark upon them further. Judgment affirmed. All the judges concur.