## ST. PAUL, MINNEAPOLIS AND MANITOBA RAILWAY COMPANY *v.* GREENALGH.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

No. 24. Argued and submitted November 6, 1890. — Decided March 2, 1891.

When a statute extends the time for the completion of a land grant railroad, upon the condition of saving and securing to actual settlers and their grantees on any of the granted lands their rights in all respects the same as if said lands had never been granted to aid in the construction of said lines of railroad, and the company asserts and continues to assert and exercise ownership over the road and other property, after the expiration of the time for completing the road, to the same extent as previously, it will be presumed, in the absence of proof to the contrary, that the company has accepted the conditions imposed, and that it has relinquished all claim to the lands thus settled and occupied.

THE case is stated in the opinion.

*Mr. S. U. Pinney* for appellants.

*Mr. S. J. R. McMillan* for appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

The plaintiff, the St. Paul, Minneapolis and Manitoba Railway Company, is a corporation created under the laws of Minnesota. The defendants are citizens of that State; and James Greenalgh, the grantee of his co-defendant, Charles W. Greenalgh, who received a patent of the United States, claims title to the land covered by that patent. The controversy in the case is over the ownership of this land, the plaintiff contending that it is a part of the grant made by Congress to the State of Minnesota on the 3d of March, 1857, to aid in the construction of certain railroads, and by the State conveyed to the St. Paul and Pacific Railroad Company, to the rights of which the plaintiff has succeeded. The defendants controvert this position, contending, first, that the premises in controversy were never covered by the grant to the State, and therefore never passed by its conveyance to the St. Paul and Pacific Railroad Company; and, second, that if they were a part of that grant, and by the conveyance of the State passed to that railroad company, the extension of the time to complete the road, which it was authorized to construct, released them from its claim.

In the case of the *St. Paul and Pacific Railroad Company* v. *The Northern Pacific Railroad Company, ante,* 1, we had occasion to consider somewhat at length the grant of Congress to the State of Minnesota by the act of March 3, 1857, and the changes in it by subsequent legislation, particularly by the joint resolution of Congress of July 12, 1862, authorizing a change in the line of one of the branch railroads, and by the act of March 3, 1865, increasing the alternate sections granted on each side of the road from six to ten sections, and enlarging the indemnity limits from fifteen to twenty miles, and the act of March 3, 1871, authorizing a change of certain designated lines in consideration of the relinquishment of lands along them.

In the year 1871 the St. Paul and Pacific Railroad Com-

pany under the assumed authority of the act of March 3, 1871, located the line of a road from St. Cloud to St. Vincent, passing through Glyndon and Crookston, differing and distinct from the definite location made by the predecessor of that company in 1857. On the 7th of November, 1871, a map of this new location, certified by the officers of the company, was filed with the governor of the State, and on the 20th of December following a copy, properly certified and approved by the Secretary of the Interior, was filed in the office of the commissioner of the general land office. Afterwards, by an act of Congress, passed March 3, 1873, 17 Stat. c. 331, p. 631, this location was recognized and virtually approved, by an extension of time to the company for the completion of the road as thus located within nine months from the time previously prescribed. Whatever doubt as to the regularity or validity of the location might otherwise arise, there can be none of its validity from the time of this recognition.

On February 15, 1872, after the map of definite location was filed, the Secretary of the Interior ordered a withdrawal from sale or other disposition, of the odd-numbered sections within twenty miles. On June 18, 1872, the Secretary directed the vacation of this order. On the 26th of June the defendant, Charles W. Greenalgh, settled on the land in controversy, which is within ten miles of the line of the road, and within its place limits. See *Barney* v. *Winona & St. Peter Railroad*, 117 U. S. 228, 231, correcting in this particular the decision in 113 U. S. 618. After the settlement, he resided upon the land and made improvements thereon. He subsequently filed and proved up his claim, and obtained a patent of the United States. On September 4, 1872, the order of vacation was duly revoked. As thus seen the settlement of this defendant was commenced during the period when the withdrawal of the lands from sale or other disposition was not in force.

The act of Congress of June 22, 1874, 18 Stat. c. 424, p. 203, in its first section declares that it extends to the St. Paul and Pacific Railroad Company the time for the completion of its roads to March 3, 1876, and "no longer, upon the following

conditions: That all rights of actual settlers and their grantees who have heretofore in good faith entered upon and actually resided on any of said lands prior to the passage of this act, or who otherwise have legal rights in any of such lands, shall be saved and secured to such settlers or other such persons in all respects the same as if said lands had never been granted to aid in the construction of the said lines of railroad."

In its second section it required the company, as a condition of acquiring any rights under the act, to sign a formal acceptance of its conditions, and file such acceptance in the Department of the Interior for record and preservation. It does not affirmatively appear that any such acceptance was ever signed; but as the company continued to assert and exercise ownership over the road and other property, after the expiration of the time for completing the road, to the same extent as previously, it will be considered, in the absence of proof to the contrary, as having in fact accepted the conditions imposed, and relinquished all claim to the lands thus settled upon and occupied.

It seems also that the State of Minnesota, on the first of March, 1877, enacted that the railroad company should not, "in any manner, directly or indirectly, acquire or become seized of any right, title, interest, claim or demand in or to any piece or parcel of land . . . upon which any person or persons have in good faith settled, and made or acquired valuable improvements thereon, on or before the passage of the act."

The road of the plaintiff under consideration here was not completed till November, 1878, and consequently the rights granted to the company were subject to forfeiture, or at least the company was subject to hostile proceedings, for breach of this condition attached by law to the grant. A mere breach of condition does not of itself work a forfeiture of a grant; some other proceeding must be taken by the grantor to indicate his dissatisfaction with the breach and his intention to exercise his rights to revoke the grant and take possession of the property in consequence thereof. While in this case no specific action was taken by Congress to work a forfeiture of

the grant, or by the State, yet the continued possession and use of the property by the company were, in fact, subject to the condition that the rights of settlers upon the lands at the time should not be interfered with, where such settlements had been made in good faith, as was the case in the present instance. And it would be in the highest degree inequitable to allow the company to have all the benefits of the extension of time to complete its road, so as to avoid any forfeiture of its privileges and franchises, without at the same time holding it to the conditions affecting t1e rights of settlers upon the lands of the company, in consideration of which the extension was made.

. We think, therefore, that the defendant James W. Greenalgh, under the patent issued to his co-defendant Charles, upon proof of the latter's settlement and subsequent improvements, had the better right to the land in controversy, and the decree of the court below is

*Affirmed.*