[No. 6859.    Decided April ·13, 1908.]

SPOKANE AND BRITISH COLUMBIA RAILWAY COMPANY,
*Respondent*, v. WASHINGTON · & GREAT NORTHERN
RAILWAY COMPANY *et al., Appellants.* [1]

COURTS—DECISIONS—FEDERAL QUESTIONS. Whether provisions of an act of Congress constituted conditions subsequent is a Federal question, upon which the decisions of the United States courts are controlling.

PUBLIC LANDS—GRANTS—RAILROAD RIGHT OF WAY — CONDITIONS SUBSEQUENT—FORFEITURE—WHO MAY CLAIM. Act of Cong. of June 4, 1898, granting a railroad right of way through the Colville Indian Reservation becomes a grant *in praesenti* upon the filing and approval of the map of definite location; and the provision in section 5 of the act that the grant shall be forfeited unless grading shall be commenced within six months, and twenty-five miles of railroad be completed within two years, is a condition subsequent which can only be taken advantage of by the government by a judicial proceeding or appropriate legislative action in the nature of "office found."

[1]Reported in 95 Pac. 64.

Appeal from a judgment of the superior court for Ferry county, Carey, J., entered February 5, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for an injunction. Reversed.

*M. J. Gordon, Charles A. Murray, George V. Alexander,* and *Thomas R. Benton,* for appellants.

*W. T. Beck,* and *Alfred M. Craven,* for respondent.

Root, J.—This was an action by plaintiff to enjoin defendants from interfering with the use of a right of way for railway purposes through the Colville Indian reservation in this state. From a judgment and decree in favor of plaintiff, the defendants appeal.

By an act of Congress approved June 4, 1898, there was granted to the appellant Washington Improvement and Development Company, and to its assigns, a right of way for its railway, telegraph, and telephone lines through the Colville Indian reservation, beginning on the Columbia river near the mouth of the Sans Poil river, running thence northerly through said reservation toward the international line. There was also granted grounds adjacent for the purposes of stations, other buildings, side tracks, and switch tracks. The act provided for the filing of maps showing the route when determined upon, said maps of definite location to be approved by the secretary of the interior. These maps were subsequently filed, and were approved by the honorable secretary prior to November 27, 1899. Before the commencement of this action, the Washington Improvement & Development Company transferred all of its rights, privileges, and immunities acquired under this act of Congress to the appellant Washington & Great Northern Railway Company.

Since the filing and approval of the maps of definite location as aforesaid, this respondent, acting under authority of the act of Congress of March 3, 1875, and the act of Con-

gress of March 2, 1899, located a route for its railway over practically the same line indicated by the maps filed by the Washington Improvement & Development Company, as aforesaid, and filed its maps with the secretary of the interior, who approved the same on October 17, 1905.

The act of June 4, 1898, under which appellants claim, contained the following provision:

"Provided, That when a map showing any portion of said railway company's located line is filed herein as provided for, said company shall commence grading said located line within six months thereafter, or such location shall be void, and said location shall be approved by the secretary of the interior in sections of twenty-five miles before the construction of any such section shall be begun."

Section 5 of the statute reads as follows:

"That the right herein granted shall be forfeited by said company unless at least twenty-five miles of said railroad shall be constructed through the said reservation within two years after the passage of this act."

Neither the Washington Improvement & Development Company nor its successor, the Washington & Great Northern Railway Company, commenced grading within six months after the approval of its maps of definite location, nor did it construct twenty-five miles of railroad, nor any, within two years after the passage of the act. For these reasons the respondent claims that appellants' location of the strip indicated by its maps became void and forfeited, and that respondent had a right to go upon the same strip of land and survey and locate its line of railway; that having surveyed and marked out its proposed line of railway upon substantially this same strip of ground after the expiration of the two years, and its said maps of location having been approved by the secretary of the interior, respondent claims that its location thereupon is legal, and that appellants have no rights whatever in the premises, and should be enjoined from in any manner inter-

fering (which appellants were doing) with the respondent's use and occupancy thereof.

Appellants maintain that the provisions of the statute, requiring the commencement of work within six months from the approval of the maps of definite location and the construction of twenty-five miles of railroad within two years after the passage of the act, were conditions subsequent, and that any breach or alleged breach of said conditions can be brought in question only by the government; that the respondent is not in a position to urge these matters, and cannot avail itself of any forfeiture on account of any such breach. It will be seen that the matters in issue are Federal questions, and the determination thereof by this court must be made in the light of the decisions of the supreme court of the United States in so far as the latter apply thereto, and an examination convinces us that every question here raised is controlled by decisions heretofore made by that high court. In the light of those decisions, we are led to the following conclusions:

The statute under which the Washington Improvement & Development Company located its line through this Indian reservation constituted a grant *in praesenti*. It was a "floating" grant until the company filed its map of definite location, and the same was approved by the secretary of the interior. The grant then became definite and fixed. It attached to the particular strip of land indicated by the map thus filed and approved, and the title to said premises became thereupon vested in the railway company. The provisions requiring the commencement of grading within six months and the construction of at least twenty-five miles of railroad within two years were conditions subsequent. Upon the failure of the railway company to comply with either of these conditions, the United States government by a judicial proceeding or an act of Congress, or possibly by other appropriate proceeding equivalent to "office found," as known in the common law, could have declared a forfeiture and made a reentry. Until

this should be done, the title remained in the railway company, and could not be disturbed by respondent or any other third party. It was a matter between the appellants and the government. Had Congress theretofore authorized the secretary of the interior or land department to declare forfeiture in cases of this kind, it is possible that the action of the secretary of the interior, in approving the map of location filed by the respondent after the expiration of the two years during which appellant should have commenced grading and should have constructed twenty-five miles of railroad but did not, might be deemed to be a declaration of forfeiture and a reentry on the part of the government. But no statute or authority of this character is called to our attention, and we are aware of none. It has been many times held by the United States supreme court, that the claiming of a forfeiture provided for in a land grant can only be made under authority of the legislative department, such as an act of Congress declaring or directing a forfeiture, or authorizing such to be made, or by a judicial proceeding by the government, and that persons claiming under other provisions of the statute, such as the homestead or exemption laws, cannot urge a breach of conditions subsequent by the grantees. Among the many decisions of the United States supreme court bearing upon the matters herein discussed, we may call attention to the following:

In the case of *Schulenberg v. Harriman*, 21 Wall. 44, 22 L. Ed. 551, that court, speaking by Mr. Justice Field, among other things, said:

"The provision in the act of Congress of 1856, that all lands remaining unsold after ten years shall revert to the United States, if the road be not then completed, is no more than a provision that the grant shall be void if a condition subsequent be not performed. . . . . And it is settled law that no one can take advantage of the non-performance of a condition subsequent annexed to an estate in fee, but the grantor or his heirs, or the successors of the grantor if the grant proceed from an artificial person; and if they do not see

fit to assert their right to enforce a forfeiture on that ground, the title remains unimpaired in the grantee.   The authorities on this point, with hardly an exception, are all one way from the Year Books down.   And the same doctrine obtains where the grant upon condition proceeds from the government; no individual can assail the title it has conveyed on the ground that the grantee has failed to perform the conditions annexed.   .   .   .   In the present case no action has been taken either by legislation or ·judicial proceedings to enforce a forfeiture of the estate granted by the acts of 1856 and 1864. The title remains, therefore, in the state as completely as it existed on the day when the title by location of the route of the railroad acquired precision and became attached to the adjoining alternate sections."

In the case of *Noble v. Union River Logging R. Co.*, 147 U. S. 165, 176, 13 Sup. Ct. 271, 37 L. Ed. 123, the court, speaking by Mr. Justice Brown, said:

"The lands over which the right of way was granted were public lands subject to the operation of the statute, and the question whether the plaintiff was entitled to the benefit of the grant was one which it was competent for the secretary of the interior to decide, and when decided, and his approval was noted upon the plats, the first section of the act vested the right of way in the railroad company.   The language of that section is 'that the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory,' etc.   The uniform rule of this court has been that such an act was a grant *in praesenti* of lands to be thereafter identified.   *Railway Company v. Alling*, 99 U. S. 463.   The railroad company became at once vested with a right of property in these lands, of which they can only be deprived by a proceeding taken directly for that purpose.   If it were made to appear that the right of way had been obtained by fraud, a bill would doubtless lie by the United States for the cancellation and annulment of an approval thus obtained.   *Moffat v. United States*, 112 U. S. 24; *United States v. Minor*, 114 U. S. 233.   A revocation of the approval of the secretary of the interior, however, by his successor in office was an attempt to deprive the plaintiff of its property without due process of law, and was, therefore, void.   As was said by Mr. Justice

Grier, in *United States v. Stone,* 2 Wall. 525, 535: 'One officer of the land office is not competent to cancel or annul the act of his predecessor. That is a judicial act and requires the judgment of a court.' *Moore v. Robbins,* 96 U. S. 530."

In *Van Wyck v. Knevals,* 106 U. S. 360, 1 Sup. Ct. 336, 27 L. Ed. 201, this language was employed:

"The route must be considered as 'definitely fixed' when it has ceased to be the subject of change at the volition of the company. Until the map is filed with the secretary of the interior the company is at liberty to adopt such a route as it may deem best, after an examination of the ground has disclosed the feasibility and advantages of different lines. But when a route is adopted by the company and a map designating it is filed with the secretary of the interior and accepted by that officer, the route is established; it is, in the language of the act, 'definitely fixed,' and cannot be the subject of future change, so as to affect the grant, except upon legislative consent. No further action is required of the company to establish the route."

In *Bybee v. Oregon & California R. Co.,* 139 U. S. 663, 11 Sup. Ct. 641, 35 L. Ed. 305, the court spoke as follows:

"An effort is made to distinguish this case from *Schulenberg v. Harriman,* in the fact that the act not only declares that the lands 'shall revert to the United States,' but that the act itself 'shall be null and void,' from which it is argued that it was the intention of Congress that the failure to complete the road should operate *ipso facto* as a termination of all right to acquire any further interest in any lands not then patented. It is true that the language of this statute differs somewhat from that ordinarily employed by Congress in connection with similar grants; but the declaration that the lands 'shall revert to the United States' is practically equivalent to a declaration that the act granting such lands shall cease to be operative if the company fail to complete its road within a specified time."

In *Grinnell v. Railroad Company,* 103 U. S. 739, 26 L. Ed. 456, the court, speaking through Mr. Justice Miller, used this language:

"Another point equally fatal to the plaintiffs in error is, that the assertion of a right by the United States to the lands

in controversy was wholly a matter between the government and the railroad company, or its grantors. The legal title remains where it was placed before the act of 1864. If the government desires to be reinvested with it, it must be done by some judicial proceeding, or by some act of the government asserting its right. It does not lie in the mouth of every one who chooses to settle on these lands to set up a title which the government itself can only assert by some direct proceeding. These plaintiffs had no right to stir up a litigation which the parties interested did not desire to be started. It might be otherwise if the legal title was in the government."

In *St. Louis etc. R. Co. v. McGee*, 115 U. S. 469, 6 Sup. Ct. 123, 29 L. Ed. 446, the court, speaking through Mr. Chief Justice Waite, spoke as follows:

"It has often been decided that lands granted by Congress to aid in the construction of railroads do not revert after condition broken until a forfeiture has been asserted by the United States, either through judicial proceedings instituted under authority of law for that purpose, or through some legislative action legally equivalent to a judgment of office found at common law. *United States v. Repentigny*, 5 Wall. 211, 267, 268; *Schulenberg v. Harriman*, 21 Wall. 44, 63; *Farnsworth v. Minnesota & Pacific Railroad Co.*, 92 U. S. 49, 66; *M'Micken v. United States*, 97 U. S. 217, 218; *Van Wyck v. Knevals*, 106 U. S. 360. Legislation to be sufficient must manifest an intention by Congress to reassert title and to resume possession. As it is to take the place of a suit by the United States to enforce a forfeiture, and a judgment therein establishing the right, it should be direct, positive, and free from all doubt or ambiguity."

In the case of *United States v. Repentigny*, 5 Wall. 211, 18 L. Ed. 627, Mr. Justice Nelson, speaking for the court, said this:

"We agree that before a forfeiture or reunion with the public domain could take place, a judicial inquiry should be instituted, or, in the technical language of the common law, office found or its legal equivalent. A legislative act, directing the possession and appropriation of the land, is equivalent to office found. The mode of asserting or of as-

suming the forfeited grant, is subject to the legislative authority of the government."

We think it will be readily seen that the foregoing decisions leave us no discretion in the matter, but conclusively determine the issues in this case adversely to respondent's contention and to the conclusions reached by the honorable trial court.

The judgment and decree appealed from will therefore be reversed, and the cause remanded with instructions to enter a judgment and decree in favor of appellants.

HADLEY, C. J., FULLERTON, CROW, RUDKIN, and MOUNT, JJ., concur.