[No. 2098, February 16, 1918.]

# DUGAN v. MONTOYA, Probate Judge, et al.

### SYLLABUS BY THE COURT.

1.  By act of July 22, 1854 (Act Cong. July 22, 1854, c. 103, 10 Stat. 308), sections 16 and 36 of each township in the territory of New Mexico were reserved for the purpose of being applied to schools in said territory. By act of July 27, 1866 (Act Cong. July 27, 1866, c. 278, 14 Stat. 292). Congress provided for the incorporation of the Atlantic & Pacific Railroad Company, which said corporation proposed to build a railroad through the then territory of New Mexico. Section 2 of the act gave the said railroad company a right of way through the public lands of the United States, "including all necessary grounds for station buildings, workshops, depots, * * * switches," etc. On January 15, 1891 (Act Cong. Jan. 15, 1891, c. 73, 26 Stat. 718), an act was passed for the relief of the inhabitants of Gallup, N. M., which said act authorized the probate judge of Bernalillo county to enter in trust for the occupants and inhabitants of said town, for town-site purposes, the southeast quarter of section 16, township 15 north, range 18 west, subject to the provisions of sections 2387, 2388, and 2389 of chapter 8 of the Revised Statutes of the United States (U. S. Comp. St. 1916, §§ 4791-4793). Pursuant to this act the probate judge of Bernalillo county, on June 17, 1891, applied to enter said land. Application was made for the full quarter section. The receiver issued to said probate judge a final receipt, which had noted thereon that it was "subject to the station grounds and right of way of the Atlantic & Pacific Railroad Company, containing 27.72 acres of land, as shown by survey map on file in this office." The patent excepted such station grounds, containing 27.72 acres, from the operation thereof. In 1884 the Atlantic & Pacific Railroad Company filed with the secretary of the interior a map showing its claim to said station grounds.

*Held*, (a) that the relief act of January 15, 1891, did not grant to the probate judge of Bernalillo county such quarter section of land, but simply authorized him to enter the same in trust for the occupants and inhabitants of the town of Gallup for town-site purposes; that such entry was subject to the provisions of the general town-site law; that, until such entry was made pursuant to the provisions of such law, the probate judge of such county took no title to the land.        P. 109

(b)   Under the provisions of section. 2388, R. S. U. S., the probate judge was only authorizel to enter land, the title to which was in the United States, at the date of the application; that it was incumbent upon the proper officers of the land department of the United States, upon application being made to enter lands for town-site purposes, to determine whether or not such lands were subject to entry, and that such determination on the part of said officers was judicial in character.

(c)   When the application was made herein the officers of the land department at Santa Fe determined that the title to the right of way and station grounds of the Atlantic & Pacific Railroad Company had vested in such company, consequently had passed from the United States, and the action of such officers in so determining is not subject to collateral attack.

P. 109

2.   The act of July 22, 1854, reserving sections 16 and 36 from entry for the purpose of being applied to schools of the territory, did not convey such section to the territory, but amounted simply to a reservation thereof, and the title to such remained in the United States, and such lands were a part of the public lands of the United States, reserved from entry, however.   The granting act to the Atlantic & Pacific Railroad Company of lands for right of way and station purposes granted a right of way over public lands of the United States, and contained no exceptions or reservations.   Where it clearly appears from the statute that the term "public lands" is intended to include lands which have theretofore been reserved by Congress for a specific purpose, such intention will prevail.                      P. 115

3.   A railroad company, by complying with the act of Congress, giving it a right to lands for right of way and station purposes, acquires more than an easement in such lands.   To say the least, it takes a limited fee therein, to which no other person can acquire any right or title, either by adverse possession or by grant from the company itself.   A claim of lots in a town site which embraces a part of such right of way and station grounds is not entitled to a deed from the probate judge including any portion thereof.                      P. 120

4.   While the railroad company was granted "necessary grounds" for the purposes named, under which grant it filed a

map with the land office showing its claim to designated land for such purpose, which claim has ever since been acquiesced in by the United States government, a private individual cannot litigate with the railroad company the question of the necessity of such land for the purpose claimed.        P. 124

5.  The question of forfeiture for nonuser could only be asserted by the United States, either by legislative declaration or in a proper judicial proceeding, and until such forfeiture has been asserted the land would not revert to the United States, but the title would remain in the grantee.        P. 126

Appeal from District Court, McKinley County; Raynolds, Judge.

Action by Daniel P. Dugan against Alejandro Montoya, as Probate Judge of the County of McKinley, and others.   Judgment for plaintiff, and defendant named appeals.   Reversed, and remanded with instructions to enter judgment for appellant.

SAM BUSHMAN and H. C. DENNY, both of Gallup, for appellant.

A. T. HANNETT and J. W. CHAPMAN, both of Gallup, for appellee.

H. B. JAMISON, of Albuquerque, *amicus curiae.*

### OPINION OF THE COURT.

ROBERTS, J.   This action was instituted in the court below by appellee against appellant as probate judge of the county of McKinley, state of New Mexico, and all or any parties unknown, interested in the land described in the complaint.   The action was brought under the provisions of section 5516, Code 1915.   This authorized the occupants of land embraced within lands patented to the probate judge as a town site, where such occupant had not reserved title thereto under the provisions of sections 5519 to 5522, inclusive, Code 1915,

by reason of such party having failed to make the statement and filing the same as required by the latter sections, or by reason of the failure of the probate judge to give notice of such entry, or the receiving of the patent, to institute suit in the district court against the probate judge and others interested, to secure a determination of the question of the party's right to a deed.

Appellee in his complaint alleged that he had failed to give the required notice; hence had not received a conveyance from the probate judge to the lots in question, and that the lots were embraced within the town site patented to the probate judge. Appellant defended upon the ground that his predecessor in office did not receive a patent to the land of which the lots in question were a portion. The court, after hearing evidence, entered judgment, directing the probate judge to execute to appellee a deed to the lots in question. No findings of fact were made. From such judgment the probate judge prosecutes this appeal.

The case below was not well tried. Some of the important facts which should have been established by evidence were seemingly taken for granted by both sides. We shall state the facts as we understand them from the admissions of the parties and the evidence offered.

On July 22, 1854, an act was passed by Congress to establish the office of surveyor general of New Mexico, Kansas, and Nebraska, to grant donations to actual settlers therein, and for other purposes. 10 Stats. at Large, p. 308. Section 5 of the act, which applied to New Mexico, reads as follows:

"And be it further enacted, that when the lands in the said territory shall be surveyed, under the direction of the government of the United States, preparatory to bringing the same into market, sections numbered sixteen and thirty-six in each township, in said territory, shall be, and the same are hereby, reserved for the purpose of being applied to schools in said territory, and in the states and territories hereafter to be created out of the same."

The lots in question were within the southeast quarter of section 16, township 15 N., range 18 W., N. M. P. M.

By the act of July 27, 1866 (14 Stats. at Large, 292),. Congress provided for the incorporation of the Atlantic & Pacific Railway Company, which was incorporated for the purpose of building a railroad from a point on the Missouri river to the Pacific Coast, and which said proposed road was to be built through New Mexico. Certain named individuals were authorized to form a corporation, and were required to do certain acts within specified periods, in order for the corporation to be entitled to the benefits of the act. The evidence in the record is silent as to compliance by the railroad company with such requirements, but it was seemingly taken for granted by both parties in the court below that the railroad company was entitled to the benefits of the act, and we shall so assume. Section 2 of the act, in so far as material, reads as follows:

"And be it further enacted, that the right of way through the public lands be, and the same is hereby, granted to the said Atlantic & Pacific Railroad Company, its successors and assigns, for the construction of a railroad and telegraph as proposed; and the right, power, and authority is hereby given to said corporation to take from the public lands adjacent to the line of said road material of earth, stone, timber, and so forth, for the construction thereof. Said way is granted to said railroad to the extent of one hundred feet in width on each side of said railroad where it may pass through the public domain, including all necessary grounds for station building, workshops, depots, machine shops, switches, side tracks, turntables, and water stations; and the right of way shall be exempt from taxation within the territories of the United States."

The statute made provision for filing a map or profile of such road with the secretary of the interior, as does the general right of way act of March 3, 1875 (18 Stat. 482, c. 152 [U. S. Comp. St. 1916, §§ 4921-4926]) ; but such was not required, however, for the purpose of securing its right of way and station grounds, but in order to avail itself of lands granted in aid of the railroad. The company, however, in 1884, filed with the secretary of the interior a map showing its right of way and station grounds through the southeast quarter of

section 16 aforesaid. The record is silent as to whether the land in question had been surveyed at the time the railroad was constructed thereover. Apparently it had not been surveyed, as there was filed in the office of the secretary of the interior in 1898 an amendatory and supplemental map showing the station grounds and right of way of the Santa Fe-Pacific Railroad Company, through sections 15 and 16, in township 15 N., range 18 W. Affidavits accompanied the map showing that the lands therein designated as station grounds and right of way had been continuously used for the purpose for which they were selected. A copy of the map was transmitted to the local land office by the secretary of the interior without approval, the secretary stating in his letter of transmittal that the law did not require approval by the secretary of the interior. It was stipulated by the parties—

"that a map was filed in the year 1884 by the Atlantic & Pacific Railroad Company, predecessors in interest of the Santa Fe Pacific Railroad Company, in the office of the secretary of the interior of the United States, subject to the introduction of said map in evidence in this cause at some subsequent time, the plaintiff not waiving his objections to the admissibility or the materiality of such map, and, further, that the amount of land claimed by the plaintiff is within such map or plat, subject to verification by the map itself."

While this stipulation is inaptly worded, we assume that it was intended thereby to agree that the lots in question in this case were embraced within the station grounds of the railroad company, as shown by the map filed in the year 1884.

On January 15, 1891, Congress passed an act for the relief of the inhabitants of Gallup, Bernalillo county, territory of New Mexico (26 Stat. at Large, 718). The act reads as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the probate judge of Bernalillo county, territory of New Mexico, be, and is hereby, authorized to enter in trust

for the occupants and inhabitants of the town of Gallup, for town-site purposes; the southeast quarter of section sixteen, township fifteen north of range eighteen west, of New Mexico principal meridian, subject to the provisions of sections twenty-three hundred and eighty-seven, twenty-three hundred and eighty-eight, and twenty-three hundred and eighty-nine of chapter eight of the Revised Statutes of the United States relating to town sites.

"Sec. 2. That upon the passage of this act the territory of New Mexico, through its proper officer, shall be, and is hereby, authorized to select as indemnity for said land, and in full satisfaction thereof, and for the purposes stated in section nineteen hundred and forty-six of the Revised Statutes, one quarter section of one hundred and sixty acres of public lands at any office in said territory, said selection to be made according to legal subdivisions and contiguous."

Pursuant to this act the probate judge of. Bernalillo county, on June 17, 1891, applied to enter said southeast quarter, section 16, under said act of Congress above quoted. Said probate judge applied for the full quarter section, and paid the sum of $200 to the register and receiver. The receiver issued to the said probate judge a final receipt, which had indorsed thereon, "Subject to station grounds and right of way of the Atlantic & Pacific Railroad Company, containing 27.72 acres of land, as shown by survey map on file in this office." Later, on the 3d day of December, 1892, patent was issued to the probate judge, which said patent contained · the following exception:

"Excepting the station grounds and right of way of the Atlantic & Pacific Railroad Company, containing 27.72 acres as shown by survey map on.file in this office"

Since the issuance of patent McKinley county was created out of a portion of Bernalillo county, and the town site in question is within such new county.

Appellee contends that the act of January 15, 1891, vested in the probate judge of Bernalillo county title to all of the southeast quarter of said section 16; that the act of the officers of the land department in excepting therefrom the station grounds and right of way of the Atlantic & Pacific Railroad Company was without authority, hence was null and void.

Dugan v. Montoya, 24 N. M. 102.

Appellant contends that the exception was properly made, and that it was incumbent upon the officers of the land department to determine what portion, if any, of said section 16 had been theretofore lawfully appropriated by other parties; and that the act of determining that the railroad company was lawfully entitled to its station grounds and right of way was a judicial act, and cannot be collaterally attacked. He further contends that, as title to the station grounds and right of way had vested in the railroad company prior to the relief act of 1891, Congress was without authority, had it attempted to do so, to convey such lands to the probate judge of Bernalillo county; and, further, that under the statutes of this state appellee was not entitled to the relief sought.

[1]   We will first consider the effect of the act of January 15, 1891. It will be noticed that it does not purport to make to the probate judge of Bernalillo county a grant of the southeast quarter of said section 16, but simply authorizes such probate judge to enter the same in trust for the occupants and inhabitants of the town of Gallup for townsite purposes, "subject to the provisions of sections 2387, 2388, and 2389 of chapter 8 of the Revised Statutes of the United States relating to town sites." Until such entry was made, pursuant to the provisions of the sections named, the probate judge of such county would take no title to the land. We are therefore necessarily required to look to the provisions of these sections for the purpose of determining what title the probate judge would take, and in what manner the same could be acquired. Section 2388 of chapter 8 of the Revised Statutes of the United States, which is to be found in 6 Fed. Stats. Ann. 350, and U. S. Compiled Statutes 1916, vol. 5, p. 5816, § 4792, reads as follows:

"Sec. 2388.   (Entry under Preceding Section when to be Made.)  The entry of the land provided for in the preceding section, shall be made, or a declaratory statement of the purpose of the inhabitants to enter it as a town site

shall be filed with the register of the proper 'land office, prior to the commencement of the public sale of the body of land in which it is included, and' the entry or declaratory statement shall include only such land as is actually occupied by the town, and the title to which is in the United States; but in any territory in which a land office may not have been established, such declaratory statements may be filed with. the surveyor general of the surveying district in which the lands are situated', who shall transmit the same to the general' land office.''

By this section, read in connection with the next preceding section, the entry in this case was to be made by the probate judge of Bernalillo county. He was required to file with the register of the proper land office an entry or a declaratory statement which, under the provisions of section 2388, could include ''only such land as is actually occupied by the town, and the title to which is in the United States.'' Under the provisions of the act of January 15, 1891, above referred to, the probate judge was' authorized to enter the entire quarter section of land; but under section 2388, supra, he could only enter such part of it to which title, at the time of entry, still remained in the United States. Congress did not undertake by the relief act to determine or adjudicate the question of title, but left that matter to the determination of the proper officials of the land office. Necessarily, in an application made by the probate judge, or the officers of an incorporated town, to enter public lands, for town-site purposes, under the provisions of section 2388, it is incumbent upon the proper officers of the United States land office to determine whether title to the land applied for is in the United States, and in allowing the entry and issuing the patent such officers can only patent such land to the probate judge or officers of the incorporation the title to which was in the United States at the time application for such land was made. In the relief act, as stated, it was specifically provided that the entry should be made subject to the provisions of section 2388 and other sections, thereby manifesting an intention on the part of Congress to leave to the determination of the

land office the question of title in so far as the United States was concerned, and to authorize the entry by the probate judge of only so much of such quarter section title to which remained in the United States. Had Congress attempted to arbitrarily confer upon the probate judge title to the entire quarter section of land, when, in fact, the government had parted with its title to all or a portion of the land in question, its act in the premises would have been null and void; for it cannot, by legislative edict, divest vested rights of others acquired under the laws of the United States. We therefore conclude that the act of Congress of January 15, 1891 (26 Stat. at Large, 718), for the relief of the inhabitants of Gallup, authorizing the probate judge of Bernalillo county to enter for town-site purposes the southeast quarter of section 16, township 15 north, range 18 west, N. M. P. M., subject to the provisions of section 2387, 2388, and 2389 of chapter 8 of the Revised Statutes of the United States, did not invest the probate judge of such county with title to said entire quarter section, or any part thereof, but simply provided a method by which the probate judge of such county might acquire title to the same upon compliance with the provisions of the Revised Statutes; and that such officer received title to only so much of said quarter section, title to which remained in the United States, at the date of the application to enter the same; and that it was the duty of the proper officers of the land department to determine the question, upon application being made to enter such quarter section, as to what part thereof title was in the United States at the date of the application to enter the same; that, in determining this question, the act of the proper officers of the land department was judicial in character, and is not subject to collateral attack.

When the application was made, the officers of the land department at Santa Fe, N. M., such land being within the jurisdiction thereof, determined that title to the right of way and station grounds of the Atlantic

& Pacific Railroad Company had vested in the railroad company, consequently had passed from the United States, and that the probate judge was not entitled to enter that portion of the real estate described in the relief act, title to which had passed to the Atlantic & Pacific Railroad Company, and reserved the same from the operation of the final receipt and patent. It had jurisdiction to determine this question, and, as stated, its action is not subject to collateral attack.

The land department of the United States, which term includes the secretary of the interior, the commissioner of the general land office, and other subordinate officers, constitutes a special tribunal vested with judicial power to hear and determine claims of all parties to the public lands which it is authorized to dispose of, and with power to execute its judgments by conveyance to the parties entitled to them. Act Cong. March 3, 1849, c. 108, 9 Stat. at Large 395; Rev. Stat. §§ 441 and 453 (U. S. Comp. St. 1916, §§ 681, 699). A patent of land within the jurisdiction of the land department, issued by it, is a judgment of that tribunal, and a conveyance of the legal title to the land to the patentee in execution of such judgment. Such a patent to land, within the jurisdiction of the department, when issued, is like the judgments of other judicial tribunals, impervious to collateral attack. If the department has the power to hear and determine the claims of applicants to public land, and to dispose of it in accordance with its decision, it has jurisdiction. Of course, if it has no power to enter upon the inquiry and to issue a patent, if, for example, title of the United States to the land has passed to private parties, the land is no longer a part of the public domain, and the officers of the land department would clearly have no jurisdiction, and a patent to such land would be absolutely null and void, and subject to collateral attack. King v. McAndrews, 111 Fed. 860, 50 C. C. A. 29; Polk v. Wendal, 9 Cranch, 87, 3 L. Ed. 665; Stoddard v. Chambers, 2 How. 284, 318, 11 L. Ed. 269; Easton v. Salisbury, 21 How. 426, 16 L. Ed. 181;

Reichert v. Felps, 6 Wall. 160, 18 L. Ed. 849; Best v. Polk, 18 Wall. 112, 117, 118, 21 L. Ed. 805; Sherman v. Buick, 93 U. S. 209, 23 L. Ed. 849; Iron Co. v. Cunningham, 155 U. S. 354, 15 Sup. Ct. 103, 39 L. Ed. 183; Railroad Co. v. Forsythe, 159 U. S. 46, 53, 15 Sup. Ct. 1020, 40 L. Ed. 71; Wright v. Roseberry, 121 U. S. 488, 519, 7 Sup. Ct. 985, 30 L. Ed. 1039; Davis v. Weibbold, 139 U. S. 507, 11 Sup. Ct. 628, 35 L. Ed. 238; Doolan v. Carr, 125 U. S. 618, 624, 632, 8 Sup. St. 1228, 31 L. Ed. 844; Wilcox v. Jackson, 13 Pet. 499, 511, 10 L. Ed. 264; Morton v. Nebraska, 21 Wall. 660, 674, 22 L. Ed. 639.

In the case of King v. McAndrews, supra, Judge Sanborn, speaking for the circuit court of appeals, said:

"But land which the department is vested with the power and charged with the duty to hear and decide the claims of applicants for, and to dispose of in accordance with its decision, is within its jurisdiction, and its patent of such land conveys the legal title to it, and is impervious to collateral attack, whether its decision is right  or wrong. Minter v. Crommelin, 18 How. 87. 89, 15 L. Ed. 279; U. S. v. Schurz, 102 U. S. 378, 401, 26, L. Ed. 167; Moore v. Robbins, 96 U. S. 530, 533, 24 L. Ed. 848, French v. Fyan, 93 U. S. 169, 172. 23 L. Ed. 812; Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800; Refining Co. v. Kemp, 104 U. S. 636, 645-647, 26 L. Ed. 875; Steel v. Refining Co., 106 U. S. 447, 450, 452, 1 Sup. Ct. 389, 27 L. Ed. 226; Lee v. Johnson, 116 U. S. 48, 49, 6 Sup. Ct. 249, 29 L. Ed. 570; Heath v. Wallace, 138 U. S. 573, 585, 11 Sup. Ct. 380, 34 L. Ed. 1063; Knight v. Association, 142 U. S. 161, 212, 12 Sup. Ct. 258, 35 L. Ed. 974; Noble v. Railroad Co., 147 U. S. 174, 13 Sup. Ct. 271, 37 L. Ed. 123; Barden v. Railroad Co.. 154 U. S. 288, 327, 14 Sup. Ct. 1030, 1038, 38 L. Ed. 992, 1001. In the case last cited the Supreme Court said: 'It is the established doctrine, expressed in numerous decisions of this court, that wherever Congress has provided for the disposition of any portion of the public lands, of a particular character, and authorizes the officers of the land department to issue a patent for such land upon ascertainment of certain facts, that department has jurisdiction to inquire into and determine as to the existence of such facts, and, in the absence of fraud, imposition, or mistake, its determination is conclusive against collateral attack.'

"The test of jurisdiction is, not right decision, but the right to enter upon the inquiry and to make some decision. Foltz v. Railroad Co., 60 Fed. 316, 318, 8 C. C. A. 635,

637, 19 U. S. App. 576, 581,; U. S. v. Winona & St. P. R. Co., 67 Fed. 959, 15 C. C. A. 107, 32 U. S. App. 289. Hence a patent evidencing an erroneous decision of a question of law or a mistaken determination of an issue of fact, which the department was vested with the power, and charged with the duty, to decide, is as impervious to collateral attack as one which is the result of correct conclusions.

"The remedy for an error of law in the action of the department regarding the title to land intrusted to its disposition is by a direct proceeding by a bill in equity to correct it. James v. Iron Co., 46 C. C. A. 476, 107 Fed. 597, 600; Bogan v. Mortgage Co., 63 Fed. 192-195, 11 C. C. A. 128, 130, 27 U. S. App. 346, 350; U. S. v. Winona & St. P. R. Co., 67 Fed. 948, 958, 15 C. C. A. 96, 106, 32 U. S. App. 272, 288; U. S. v. Northern Pac. R. C., 95 Fed. 864, 870, 37 C. C. A. 290, 296; Cunningham v. Ashley, 14 How. 377, 14 L. Ed. 462; Barnard v. Ashley, 18 How. 43, 15 L. Ed. 285; Garland v. Wynn, 20 How. 6, 15 L. Ed. 801; Lytle v. Arkansas, 22 How. 193, 16 L. Ed. 306; Lindsey v. Hawes, 2 Black, 554, 562, 17 L. Ed. 265; Johnson v. Towsley, 13 Wall. 72, 85, 20 L. Ed. 485; Moore v. Robbins, 96 U. S. 530, 538, 24 L. Ed. 848; Bernier v. Bernier, 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152."

In the case of Steel v. St. Louis Smelting Co., etc., 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226, the court said:

"We have so often had occasion to speak of the land department, the object of its creation, and the powers it possesses in the alienation by patent of portions of the public lands, that it creates an unpleasant surprise to find that counsel, in discussing the effect to be given to the action of that department, overlook our decisions on the subject. That department, as we have repeatedly said, was established to supervise the various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of Congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open for sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceedings for its annulment or limitation. Such has been the uniform language of this court in repeated decisions."

Tested by the foregoing rules, we believe it is clear that the officers of the land department were required

to determine upon the application made by the probate judge of Bernalillo county for the southeast quarter of said section 16, the question as to what portion of such land the United States had title at the date of the application, and to award to such applicant a final receipt and patent for such land only, title to which still remained in the government. In determining this question the register and receiver of the United States land office at Santa Fe acted in a judicial capacity, and determined, as evidenced by the final receipt and patent, that the Atlantic & Pacific Railroad Company had theretofore acquired title to its station grounds embracing 27.72 acres, and accordingly excepted the same from the operation of the final receipt and patent. Its judgment, thus evidenced by the patent, is not subject to collateral attack, and the present proceeding, being a collateral attack upon such judgment, cannot be maintained.

[2] While the above really disposes of the merits of the appeal, we shall pass beyond and consider the question of title to the Atlantic & Pacific Railroad Company and its successor in interest to the station grounds in question. The record before us discloses that the railroad company, independently of the judgment of the land department, had title to its station grounds at the date of the passage of the relief act by Congress and the entry thereunder by the probate judge. In 1884, as stated, it filed its map showing its claim to the station grounds with the proper officers of the land department, thus giving notice to the United States and to others interested that it claimed the land described under the granting act of July 27, 1866. Appellant argues that notwithstanding the granting act and the asserted claim by the railroad company to the station grounds, prior to the inception of his rights, that the railroad company, at most, took only an easement to the station grounds; hence he was entitled to the fee, subject to such easement; that the probate judge likewise took the fee, subject to such easement; hence the court should have re-

quired the execution of the deed. He further argues that he was in possession of the lots in question long prior to the passage of the relief act and has held continuous possession since; his possession, however, not going back to the year 1884, at which time the map of the railroad company was filed with the secretary of the interior. It is further intimated by appellant, but not strenuously urged, that the railroad company could acquire no right to its station grounds and right of way through the school section, because such lands had been reserved by the act of July 22, 1854, for the use of the schools in the territory.

Noticing, first, the last contention, it will be observed that the act of July 22, 1854 (10 Stat. at Large, 308), did not purport to convey sections 16 and 36 in each township to the territory of New Mexico, but simply provided that when such townships embracing such sections, should be surveyed, that the sections named were reserved, for the purpose of being applied to schools in said territory. The act granting the right of way and station grounds to the Atlantic & Pacific Railroad Company gave to the company such right of way and station grounds through and upon the public lands of the United States. It did not contain the exception found in the fifth section of the general right of way act of March 3, 1875 (18 Stat. at Large, 482), which excepted from the operation of the act "lands within the limits of any military, park, or Indian reservation, or other lands specially reserved from sale." The question as to whether the railroad company was entitled to acquire a right of way and station grounds through school sections thus reserved, but not granted to the state or territory, was passed upon by Judge Brewer in the case of Union Pacific R. Co. v. Douglas (C. C.) 31 Fed. 540. In this case he held that the railroad company took title to its right of way through sections 16 and 36, the same being school sections similarly reserved from entry in the territory of Nebraska. The reasoning advanced

by Judge Brewer in that case is distinctly applicable to the present question. He said:

"Further, I observe that the Union Pacific Railroad Company act contemplated a speedy construction of the road. The state of Nebraska was not then admitted to the Union, and there was no certainty when it would be. It is a matter of public history that a large part of the western portion of the then territory was unsurveyed. No one could say in advance where the sixteenth and thirty-sixth sections would lie. Can it be possible that Congress, intending the speedy construction of the road, also contemplated that if, after construction, it should be found by survey that the line constructed ran through the sixteenth or thirty-sixth section, its right of way should cease, and it be deemed a trespasser thereon? Again, no provision is made for condemning the right of way over school sections, nor is it easily to be perceived how, under the statute then in force, proceedings could be had for such condemnation. Still, again, this right of way through school sections has been accepted without challenge for 20 years. This indicates the general understanding, and is significant. These considerations, among others, lead me to the conclusion that, beyond any doubt, Congress intended by this act of July 1, 1862, to grant a right of way through those lands which by surveys should be found to be sections 16 and 36, the school sections which it intended to give to the future state of Nebraska."

While this decision has been distinguished by the Supreme Court of the United States so far as we know it has announced no contrary rule upon this precise point. Cases distinguishing the above are referred to in the case of Jackman v. A. T. & S. F. R. Co., 170 Pac. 1036, recently decided by this court, but not yet officially reported.

In the case of Railroad Co. v. Baldwin, 103 U. S. 426, 26 L. Ed. 578, Mr. Justice Field, speaking of a similar right of way grant to the St. Joseph & Denver City Railroad Co., said:

"But the grant of the right of way by the sixth section contains no reservation or exceptions. It is a present absolute grant, subject to no conditions except those necessarily implied, such as that the road shall be constructed and used for the purposes designed. Nor is there anything in the policy of the government with respect to the public lands which would call for any qualification of the terms.

Those lands would not be less valuable for settlement by a road running through them.   On the contrary their value would be greatly enhanced thereby.

"The right of way for the whole distance of the proposed route was a very important part of the aid given. If the company could be compelled to purchase its way over any section that might be occupied in advance of its location very serious obstacles would be often imposed to the progress of the road.   For any loss of lands by settlement or reservation, other lands are given; but for the loss of the right of way by these means, no compensation is provided, nor could any be given by the substitution of another route."

In the case of Union Pacific R. Co. v. Karges (C. C.) 169 Fed. 459, the question arose under a similar right of way granting act to the Union Pacific Railroad Company, as to whether it took title to a right of way through sections 16 and 36 in the territory of Nebraska, which sections had been reserved, but not granted, for school purposes.   The district court held that the right of way act granted to the railroad company a right of way across the land reserved for school purposes.

While it is true that the Supreme Court of the United States has held that the words "public lands," when a different intention is not expressed, are used to designate such lands as are subject to sale or other disposals under general law, and does not include such as are reserved by competent authority for any purpose or in any manner, although no exception of it is made.   Bardon v. Northern Pacific R. Co., 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806; Wilcox v. McConnel, 13 Pet. 498, 513, 10 L. Ed. 264; Leavenworth, etc., R. R. Co. v. United States, 92 U. S. 733, 741, 745, 23 L. Ed. 634; Newhall v. Sanger, 92 U. S. 761, 23 L. Ed. 769; Doolan v. Carr, 125 U. S. 618, 630, 8 Sup. Ct. 1228, 31 L. Ed. 844; Cameron v. United States, 148 U. S. 301, 13 Sup. Ct. 595, 37 L. Ed. 459; Mann v. Tacoma Land Co., 153 U. S. 273, 284, 14 Sup. Ct. 820, 38 L. Ed. 714; Barker v. Harvey, 181 U. S. 481, 21 Sup. Ct. 690, 45 L. Ed. 963; Scott v. Carew, 196 U. S. 100, 109, 25 Sup. Ct. 193, 49 L. Ed. 403.   These decisions, as stated by Judge Munger in the Karges case, however, do not conflict

Dugan v. Montoya, 24 N. M. 102.

with the settled doctrine, that where it clearly appears
from the statute that the term "public lands" is intend-
ed to include lands which have theretofore been reserv-
ed by Congress for a specific purpose, such intention
will prevail, as it is a rule of construction that a legis-
lative act is to be interpreted according to the plain in-
tention of the legislative body.  Winona & St. Peter. R.
R. Co. v. Barney, 113 U. S. 618, 5 Sup. Ct. 606, 28 L.
Ed. 1109.  In this case the court, speaking with respect
to the acts of Congress making grants of certain lands,
said:

"They are to receive such a construction as will carry
out the intent of Congress, however difficult it might be to
give full effect to the language used if the grants were by
instruments of private conveyance.   To ascertain that in-
tent, we must look to the condition of the country when
the acts were passed, as well as to the purpose declared on
their face, and read all parts of them together."

In the case of United States v. Union Pacific R. Co.,
91 U. S. 72, 23 L. Ed. 224, will be found a very inter-
esting discussion of right of way granting acts, and the
purpose in view by Congress, from which it will be seen
that the object and purpose in view was to secure, at
an early date, the actual construction and operation of
a railroad from the Missouri river to the Pacific Coast,
not for private interests, but for the national welfare;
and as Judge Munger aptly says in the Karges case:

"It cannot be supposed that Congress intended that such
national object should be thwarted by the inability of the
company to construct this road across lands belonging to
the United States, but which had been reserved for other
purposes."

If the railroad company, under this grant, would not
take a right of way across sections reserved for school
purposes not yet transferred to the state, the title to
which remained in the United States government, the
railroad company would be accordingly hampered in
the construction of its line, and after its construction

and operation for years would be compelled, at great expense, to purchase, from those who might subsequently become owners of the lands, its right of way and other lands acquired in the operation of its road. When the grant was made in 1866, large sections, in fact most of the public land in the state of New Mexico, had not been surveyed, and there was no way by which the railroad company could determine whether its proposed route was passing through what would later be school sections or otherwise.

From the foregoing consideration, we believe that it was the intention of Congress that the granting act should apply, in so far as the right of way was concerned, to a right of way through the public lands of the United States reserved for school purposes, as well as public lands not reserved for any purpose.

[3] This being true, the question remains as to whether the Atlantic & Pacific Railroad Company obtained title by virtue of the granting act to the station grounds claimed by it in the southeast quarter of section 16 in question. As stated, in 1884 it filed in the office of the secretary of the interior a map or plat showing thereon its claim to the station grounds in question. If, at that time, by compliance with the granting act— counsel for appellee makes no question but that the railroad company had fully complied therewith—it obtained title to the land embraced within such claim for station grounds, clearly appellee has no claim upon any land embraced within such station grounds.

In the case of United States Trust Co. v. Territory, 8 N. M. 673, 47 Pac. 725, the territorial Supreme Court, in passing upon the effect of the right of way granting act to the Atlantic & Pacific Railroad Company, here under consideration, after reviewing numerous authorities, held that the title of the government to the lands granted to the company for such purpose passed absolutely to the railroad company. This case was carried to the Supreme Court of the United States (172 U. S. 171, 19 Sup. Ct. 123, 43 L. Ed. 407), and the decision of the

territorial Supreme Court was affirmed.  In the de-
cision of the case the court found that it was unneces-
sary to pass upon the question as to whether the Atlan-
tic & Pacific Railroad Company took the fee to the real
estate within its right of way limits, and held that the
interest granted by the statute to the company was real
estate of corporeal quantity, which was as far as it
was required to go; but the court did say that thereto-
fore, in the case of Missouri, Kansas & Texas Railway
Co. v. Roberts, 152 U. S. 144, 14 Sup. Ct. 496, 38 L. Ed.
377, that it passed on a grant to one of the branches
of the Union Pacific Railroad Company of a right of
way 200 feet wide, and decided that it conveyed the fee.
It was urged in the New Mexico case that this point
was not involved in the Roberts case, hence was not
necessary to a decision thereof; but the court held that
the point was directly involved in the former case, and
said:

"The language of Mr. Justice Field, who delivered the
opinion of the court, would be unaccountable else.  The
difference between an easement and the fee would not have
escaped his attention and that of the whole court, with the
inevitable result of committing it to the consequences which
might depend upon such difference."

In a latter case (Northern Pac. R. Co. v. Townsend,
190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044), Mr.
Justice White, speaking for the court, said:

"Following decisions of this court construing grants of
rights of way similar in tenor to the grant now being con-
sidered (New Mexico v. United States Trust Co., 172 U. S. 171,
181 [43 L. Ed. 407, 410, 19 Sup. Ct. 128]; St. Joseph & Denver
C. R. Co. v. Baldwin, 103 U. S. 426 [26 L. Ed. 578]), it
must be held that the fee passed by the grant made in sec-
tion 2 of the act of July 2, 1864.

While the case above referred to had to do with right
of way proper, clearly the same rule would apply to
station grounds, for the language of the granting act is
identical as to the two uses.  If the railroad company
took the fee simple interest in its right of way, it would

take a like interest in the station grounds; and, this being true, upon compliance with the act of Congress. which enables it to assert its claim to the station grounds, and the assertion of such claim, either by actual possession and use or notice thereof, by filing in the proper land office a map showing its claim thereto, its. rights would become fixed, after which Congress would be without authority to make other disposition of the land so long as title thereto remained in the company,. and no other person could assert or acquire a claim thereto which would oust the railroad company from its right of possession; nor could the railroad company convey any portion of such land to any other person without the consent of Congress. That title thereto could not be acquired by adverse possession was held by the Supreme Court of the United States in the case of Northern Pacific R. Co. v. Townsend, supra. The court said:

"In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted. This being the nature of the title to the land granted for the special purpose named, it is evident that to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use would be to allow that to be done by indirection which could not be done directly; for as said in Grand Trunk R. Co. v. Richardson, 91 U. S. 454, 468 [23 L. Ed. 356, 361], 'a railroad company is not at liberty to alienate any part of its roadway so as to interfere with the full exercise of the franchise granted.' Nor can it be rightfully contended that the portion of the right of way appropriated was not necessary for the execution of the powers conferred by Congress; for, as said in Northern P. R. Co. v. Smith. 171 U. S. 261 275 [43 L. Ed. 158, 163, 18 Sup Ct. 794, 799], speaking of the very grant under consideration; 'By granting a right of way 400 feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance.' Neither courts nor juries, therefore, nor. the general public, may be permitted to conjecture that a portion of such right of way is no longer needed for the use of the railroad and title to it has vested in whomsoever chooses to occupy the same. The whole of the granted

Dugan v. Montoya, 24 N. M. 102.

right of way must be presumed to be necessary for the pur-
poses of the railroad, as against a claim by an individual of
an exclusive right of possession for private purposes.

"To repeat, the right of way was given in order that the
obligations to the United States, assumed in the acceptance
of the act, might be performed.  Congress having plainly
manifested its intention that the title to, and possession of,
the right of way should continue in the original grantee,
its successors and assigns, so long as the railroad was main-
tained, the possession by individuals of portions of the right
of way cannot be treated, without overthrowing the act of
Congress, as forming the basis of an adverse possession
which may ripen into a title good as against the railroad
company."

Thus, to say the least, the railroad company took a
limited fee to its station grounds, to which the appellee
could acquire no title, either by adverse possession or
by grant from the company itself.  The above being
the effect of the holding of the Supreme Court of the
United States, and involving, as it does, the construc-
tion of the federal statute as to the effect of the right
of way granting act, it is necessarily binding upon this
court.  The Townsend case was referred to, with ap-
proval, by the Supreme Court of the United States in
the later case of Northern Pacific R. Co. v. Ely, 197
U. S. 1, 25 Sup. Ct. 302, 49 L. Ed. 639.  In the case of
Clairmont v. United States, 225 U. S. 551, 32 Sup. Ct.
787, 56 L. Ed. 1201, the court again held that the rail-
road company, by the grant of Congress, obtained the
fee in the land constituting the right of way.  In the
case of Union Pacific Railroad Co. v. Laramie Stock
Yards, 231 U. S. 190, 34 Sup. Ct. 101, 58 L. Ed. 179,
the court said:

"It is established that the right of way to the several
railroads was a present absolute grant, subject to no con-
ditions except those necessarily implied, such as that the
roads should be constructed and used; and it has been de-
cided that the right of way was a very important aid given
to the roads (Railroad Company v. Baldwin, 103 U. S. 426
[26 L. Ed. 578]; Stuart v. Union Pacific Railroad Co.. 227
U. S. 342 [33 Sup. Ct. 338, 57 L. Ed. 535]); and that it
could not be voluntarily transferred by the companies nor
acquired against them by adverse possession (Northern
Pacific Railway Co. v. Townsend, 190 U. S. 267 [23 Sup.

Ct. 671, 47 L. Ed. 1044]); Northern Pacific Railroad Co. v. Smith, 171 U. S. 260, 275 [18 Sup. Ct. 794, 43 L. Ed. 158]; Northern Pacific Railroad Co. v. Ely, 197 U. S. 1, 5 [25 Sup. Ct. 302, 49 L. Ed. 639]."

From the above it will be seen that appellee's contention that the railroad company had only an easement in and to its station grounds is without support; that, to say the least, it took a limited fee therein, with a possible right of reverter to the United States; such being the status of the railroad company's title, the probate judge would have no title thereto of any kind or character, and would be without authority to convey title to any portion thereof to appellee.

[4] In this case Mr. H. B. Jamison, attorney at law, has filed a brief as amicus curiæ on behalf of the appellee. He states that he represents clients who are in the same position as appellee herein in regard to the land claimed by the Santa Fe as station grounds. He advances a point not presented by counsel for appellee. His contention is that under the act of July 27, 1866, the railroad company was given only necessary grounds for station buildings, workshops, depots, etc., that the proof in the case shows that the railroad company has never used the 27.72 acres in controversy for any of these purposes; that the only use to which it has put the land has been the leasing of the same for warehouse purposes, and that the lots in controversy are not a portion of the land so leased; that, under the act of 1891, the probate judge was authorized to enter the entire quarter section and applied for the same; that the final receipt and patent conveyed all of the quarter section to the probate judge, excepting therefrom the station grounds of the Santa Fe, embracing 27.72 acres; that the railroad company has not utilized the land so excepted, and the same is not necessary for station purposes, hence title passed to the probate judge.

This contention we believe is without merit. The law under which the Santa Fe acquired its right to the station grounds and its right of way did not provide,

as we have stated, for the filing of a map or plat of its road and approval thereof by the secretary of the interior in order for it to become entitled to such rights. The general right of way act of 1875 provides a method by which a railroad company may secure, in advance of construction of its right of way, by filing with the secretary of the interior a profile of its road and securing his approval thereof. That act is silent as to the method of acquiring title to the station grounds, but, by rule, the department of the interior requires the railroad company to designate lands claimed for such purposes, and provides for the approval thereof by the secretary of the interior. That act is worded differently from the granting act of the Atlantic & Pacific, in that it uses the word "adjacent" to its right of way instead of the word "necessary" grounds for station purposes, etc., Under the latter act, where a railroad company, under the rules of the land office, has filed a map showing its claim for lands adjacent to its right of way for station purposes, and such map has been approved by the secretary of the interior, undoubtedly no one could question the title of the railroad company to such station grounds so approved, except, possibly, the United States. Under the act of 1866, under which the railroad company claimed, as stated, no act on the part of the secretary of the interior or officers of the land department was necessary in order to vest title in the railroad company to its right of way or station grounds. In 1884 it filed a plat or map showing that it claimed the right to 27.72 acres for station grounds and other purposes at its station at Gallup. In making its selection for such purpose it had a right to anticipate its future requirements. Its claim was not approved by the secretary of the interior, as his approval was not required. We assume that he transmitted to the local land office at Santa Fe such map, and that proper notations were made upon the plats in that office showing the claim of the railroad company to its station grounds. The United States thereby had notice of the fact that the railroad

company had taken possession of, and asserted a claim to, the 27.72 acres for station purposes, under the act of 1866. Since that time it has acquiesced in such claim, thereby evidencing its consent to such appropriation. This being true, can a private individual litigate out with the railroad company the question of the necessity of such land for station purposes? We think not. We believe that when the Santa Fe laid claim to the land in controversy for the purpose stated, and such claim was acquiesced in by the grantor, that title to the land passed to the railroad company, and that the question of forfeiture for nonuser could only be asserted by the United States, either by legislative declaration or in a proper judicial proceeding. Until a forfeiture has been actually enforced by legislative declaration or judicial proceedings brought by the United States for that purpose, the land would not revert to it, but the title would remain in the grantee. Spokane, etc., R. Co. v. Washington, etc., R. Co., 49 Wash. 280, 95 Pac. 64; Francoeur v. Newhouse (C. C.) 40 Fed. 618, 14 Sawy. 351; United States v. Curtner (C. C.) 38 Fed. 1; St. Louis, I. M. & S. R. Co. v. McGee, 115 U. S. 479, 6 Sup. Ct. 123, 29 L. (Ed. 446; Schow v. Harriman, 154 U. S. 609, 14 Sup. Ct. 1209, 22 L. Ed. 556; Shulenberg v. Harriman, 21 Wall. 44, 22 L. Ed. 551; Van Wyck v. Knevals, 106 U. S. 360, 1 Sup. Ct. 336, 27 L. Ed. 201; Bybee v. Oregon & C. R. Co., 139 U. S. 663, 11 Sup. Ct. 641, 35 L. Ed. 305; United States v. Northern P. R. Co., 177 U. S. 435, 20 Sup. Ct. 706, 44 L. Ed. 836; St. Paul, M. & M. R. Co. v. Greenalgh, 139 U. S. 19, 11 Sup. Ct. 395, 35 L. Ed. 71; Northern P. R. Co. v. Smith, 171 U. S. 260, 18 Sup. Ct. 794, 43 L. Ed. 157.

[5] In the case of Oregon Short Line v. Stalker, 14 Idaho 362, 94 Pac. 56, it was stated that the only person who was in a position to take advantage of the forfeiture of the right of way was the United States government. In the case of Cathcart v. Minn. & Manitoba R. Co., 34 Land Dec. 619, the secretary of the interior said:

"In view of the situation in this case, it would not seem to make any difference whether the grant in question to the railroad company be held to convey a base fee or merely an easement. Under the decision of the court in the case of Northern Pacific Railroad Co. v. Smith, supra, until a forfeiture has been declared for misuser or nonuser, said lots cannot be entered by Cathcart, and such forfeiture 'could not be enforced in a private action.' "

The Stalker case was taken to the Supreme Court of the United States, and the state court was sustained. 225 U. S. 142, 32 Sup. Ct. 636, 56 L. Ed. 1027.

For the reasons stated, the judgment of the lower court will be reversed and the cause remanded, with instructions to enter judgment for appellant, and it is so ordered.

HANNA, C. J., and PARKER, J., concur.